Good afternoon, Your Honors. May it please the Court, I'm Steve Brannock of Brannock & Humphreys here for Mr. MINKS. We're here today to talk about the hypothetical negotiation under Georgia-Pacific for determining a reasonable royalty. As evidenced by the trial judge's two decisions below and several of his important evidentiary rulings, it's clear that the trial judge had a very narrow view of that hypothetical negotiation test. And specifically, the two points I'd like to talk about today in terms of the judge's evidentiary rulings is that the judge prevented Mr. MINKS from presenting evidence on his sales and profits in connection with not only the patented product or some other related products, but also prevented him from presenting evidence on Polaris' profits, both of which are elements that are firmly within the Georgia-Pacific test. In this hypothetical negotiation, what the parties are attempting to do and what the courts are struggling with is to determine the economic value of the patent. What does Polaris' income have to do with the scope of the claimed invention? There are two sides of the bargaining position, obviously. One is what the licensor is able to extract because of the value of the patent. And on the other side, what would the patentee or what would the licensee be willing to pay? The profits on that ATV are an extremely important part of determining the second part of the equation, what Polaris would be willing to pay in this negotiation. To find the value of this invention. Now, I know that someone in your position would dearly love to bring an action against, taking an example, Microsoft and say they make $500 billion a year and we would just want a little piece of it. But that has nothing to do with the value of the invention, does it? This district judge is right on the money, isn't he? I would respectfully disagree, Your Honor. The reasonable negotiation is all about leverage. What leverage does Mr. Minx have over Polaris? Mr. Minx had very significant leverage over Polaris because this reverse speed limiter was a very important part of that product. And in fact, without that reverse speed limiter, they could not safely sell this product. All of that is fine. And all of that is very good evidence. But you want to say Polaris makes, in my example, $500 billion and we want a little piece. That's not relevant to the value of this breaking system, is it? Respectfully, that's not how we put the point below. It's not that we wanted a piece of those profits. It's that in analyzing the respective leverage of the two parties who put all their cards on the table in this hypothetical negotiation, Polaris is making a lot of money off of this product. It needs that part. It needed that part so badly that it was willing to willfully infringe and lie to Mr. Minx because it didn't want to get into another negotiation with Mr. Minx. The value that Polaris is receiving from that is an extremely important part. Did you do a regression analysis to find out how much of that income is attributable to the claimed invention? We never got to that point because the judge wouldn't let the evidence in in the first place. That's because, well, we've already discussed how reasonable that is. The point is, did you propose a reasonable regression economic analysis with evidence that really shows the value of the claimed invention, not the inflated value of all of Polaris's profits? No, but again, because the parties never got to that point below. You have to start with that point. That's the point you have to prove. So you start with that. You don't get to it later on. If the judge is going to declare Polaris's profits off-limits in the first place, what is the purpose of this regression analysis? I mean, they go hand-in-hand. The judge has to recognize first that part of this economic bargaining position— You know, next time if you put forth the regression analysis and say, well, we need to start with their profits, I'll bet you get a different result. You didn't do that. Right, but there was certainly other evidence. There was evidence of how important this product was to Polaris. Let's go very simply. If it is shown that but for this product, Polaris can't sell and can't make any of those profits, why aren't Polaris's profits relevant? But essentially that was the evidence that was put forward to me. Because they're not relevant to the scope of the claimed invention. There's kind of two basic principles here. One is you've got to have valid economic evidence, not just inflated figures. And number two is you've got to tie it right to the scope of the claimed invention. I don't see any effort on your part to do that. The district judge excludes it. I think he's right on the money. I think that there was enough evidence placed before the court and certainly the jury that the jury could have decided that but for this product— and we only want a little piece. And that's precisely what this court has said in Lucent and Rescue Net, for starters, as well as Bick, Wright-Hite, Crystal Semiconductor, Riles v. Shell, and you want me to go on? We've said over and over again that's not accurate evidence. That's not linked to the scope of the claimed invention and it's not something we're going to allow. It seems like he'd read our cases. He knew what he was doing. Polaris would have been perfectly free to disagree with Minx's argument that but for this pad they couldn't have sold their product at all and made any of those products. It's a different question. We're looking at the value of that, not the value of all of Polaris's products. Right. And, Your Honor, I'm not suggesting that the ultimate value of the result of this reasonable negotiation rests solely upon the amount of their profits. All we are saying is that is one piece of a much larger puzzle. If you look at the— that they actually lost money on each sale of this ATV, independent of your invention, but somehow for reasons hard to understand. They were selling these things at a loss. Would that have been relevant to the royalty that your invention was entitled to? I think it would have been relevant to looking at the bargaining positions of the parties as they sat down to play poker in their negotiations. A party can't—I mean, what we're trying to do is reconstruct much later on what would have happened had the parties sat across the table from each other. And if I was sitting across the table from someone else and I was losing money on my product, I would say I can't afford to pay you that royalty because I don't have the money and it's not generating the income. But on the other hand, if you're sitting across from me and I'm making a lot of money off of this patent and product, as part of that argument going back and forth in this arm's-length negotiation, you are certainly going to point out to me, and what lawyer or sound business person wouldn't do this, that look at how much money you're making from this product. You can afford to pay me what I'm asking. Did you bring in any kind of expert witness, an economist or accountant, to go through the process of figuring out the number of units that Polaris sold with the invention, the ATVs that were sold, the number of units per year that were sold, the impact of that particular use of the invention? No, the parties did not offer an expert witness. They certainly stipulated to the number of intrinsic— The other one trying to prove damages— I understand your argument. —wouldn't it be incumbent upon the plaintiff to do that, to establish the parameters of any kind of a sale made by Polaris in conjunction with the unit itself? I would absolutely agree that it would be a very good idea to present that expert testimony. The trial counsel in this case did not, but that's not the only way you can prove your case, and so the absence of expert testimony I think is not fatal. Again, the experts would have come in after the— Well, the judge allowed Mr. Minx to testify, too, didn't he, as to the royalty rates that he was receiving. He did. He went through a whole series of royalty rates, 4, 10, 5, 20 percent, and that was presented to the jury. Right, but what was not presented to the jury— And it was up to the jury to select the royalty rate. Right, but what Mr. Minx—and now let's shift the evidence from Polaris' side of the table back to Mr. Minx's side of the table, because I think this is an equally important problem. Mr. Minx was able to testify about the 4 percent, the 10 percent, the 20 percent royalty. What he was not allowed to testify is about the profits that he was making when these products were being sold to Polaris. Again, we're getting back to the purpose here is to determine the economic value of the patent, and you can realize economic value in a lot of ways. You can realize it through traditional royalty, but you can also realize it through the sale of a product or a number of products. In this case, Mr. Minx did not want to license this product, and so in 1997, the parties entered into a negotiation where Mr. Minx refused to license the product, and instead, he realized the economic value of that patent through the $7 million two- or three-year supply arrangement. Now, what Mr. Minx was not allowed to talk about when he presented his testimony was the economic value to him of that $7 million supply agreement. That, to me, is extremely representative of the reasonable economic value of that patent, and so put aside the Polaris problem, but on Mr. Minx's side, Mr. Minx should have been able to testify about the profits that he would have received as a result of that deal because those profits were the fairest representation of the value of that patent. Remember, we're talking about a hypothetical negotiation, but here is the closest thing we have. We have the actual negotiation where Mr. Minx and the representative from Polaris were sitting across the table, and this is the economic arrangement that they worked out. Do you want to save me a little time? I would. Let me just make one very brief point, which is on the prejudgment interest. It's clear under the statute that the purpose of prejudgment interest is to ensure that you're fully compensated, and a very big element of that is making sure that you're fully compensated for the use of your money. The trial judge, the loss of the use of the money, the trial judge got both the beginning date and the ending date right, wrong, excuse me. He got the beginning date wrong because he overlooked the Supreme Court's decision in the GM v. Devick's case, which made it clear that you no longer had to wait until damages were liquidated, that they run from the date of infringement. He looked at the wrong end date because he essentially blamed Mr. Minx for the appeal when both sides appealed, and Mr. Minx won the first appeal to suggest that somehow taking that appeal, which he won, was tantamount to delay, which we think was incredibly unfair. So at the very least, prejudgment interest needs to be adjusted. Thank you, Mr. Brannick. Mr. Roth. Good afternoon. All of the issues that are actually raised by Mr. Minx, the evidentiary rulings, the jury instructions, the verdict forms, and the prejudgment interest are subject to a highly deferential standard of review. But on the prejudgment interest, you've got to compensate for the infringement, right? The general principle in General Motors is that there is not a restriction on the award of prejudgment interest to require that it be entirely liquidated before you can get it. The Supreme Court in that case, though, did not go on and create a general rule that you always get prejudgment interest from the start of the infringement. But the statute gives you a right to full compensation. The statute gives you a right to prejudgment interest as determined in the discretion of the district court. In this case, the statute does not say you get a particular kind of prejudgment interest or you get it at a particular time period or it extends to a particular time. It says in 284 you get interest as determined by the district court in reasonable exercise of discretion. Here, the district court properly exercised discretion as to all three aspects that Mr. Minx challenges, the start date, the end date, and the type of interest. As to the start date. You start with the end date. Okay. How can it be Mr. Minx's fault that he needs to appeal a second time? And he doesn't appeal alone. He has the other party appealing, too, you. As to the end date, Your Honor, the law is abundantly clear that a district court judge looking at that issue is entitled to look at who's responsible for any undue delay. It is a factual determination given to the district court to make that decision. In this case, the district court looked at the record, having tried the first case, having received the remand and tried it again, and concluded based on the facts that the primary responsibility, not the sole responsibility, but the primary responsibility for that delay for the appeal was with Mr. Minx. Why was that? The reason it was his responsibility is because in the first case, both the district court and this court found that Mr. Minx failed to present a coherent, understandable damages theory. There was no way that anyone could justify the jury verdict there based on what Mr. Minx had done at trial. As a result, even if there hadn't been a remitter issue, even if there hadn't been a notice instruction issue, there was going to be a second trial. Why? Not because anybody appealed, but because Mr. Minx's first proofs were defective. And in that regard, he is not entitled to pretend to stand in the same place as the plaintiff in General Motors v. Devex, where he's merely an innocent party who is having to appeal in order to vindicate his rights. Here, he's responsible. Well, it seems to me that the judge below essentially focused on the fact that Mr. Minx did appeal the first case and was penalizing Mr. Minx for appealing that first case, so that no prejudgment interest would apply during that time period. If it was correct to do it under the statute, why is Mr. Minx then being penalized for that prejudgment interest for appealing or exercising his rights to appeal? Mr. Minx is not being penalized, and while that is the construction that they place on what the judge did, the record won't support the construction that this is a penalty for having appealed. What the district court did was looked at, why did we have a delay? The reason we had a delay was because we needed a new trial. Why did we need a new trial? We needed a new trial because the plaintiff's proofs were incomprehensible to any of the judges who looked at it, so there's going to be a new trial anyway. So who's responsible for the delay between the first trial and the second trial? The person who didn't put on the proper proofs in the first case. Now, the district court did not say that nobody else has any responsibility. He didn't say that, you know, my jury instruction on notice was correct and, you know, no, I wasn't required to offer you a new trial. But what he's saying is, regardless of those two things, there was going to be a new trial because of what Mr. Minx did. As a result of that, the delay, not as a punishment, but just the delay, who of these two parties, Polaris or Minx, should be responsible for prejudgment interest during that time period? All the judge is saying is it should be Minx. And that's not an abuse of discretion. It's a very reasonable way to look at the facts. If he's not responsible for the whole delay, how come he has to bear the entire burden? Because— In other words, it might have made—your argument might make sense if the district judge had, say, cut off two months or three months or four months. He cuts it off at the point of the second appeal, which links it very clearly to Minx is somehow responsible for the whole appeal, which she was entitled by law to bring. But, Your Honor, the issue is who's responsible for the delay. You don't have to be 100 percent responsible. If the district judge had said it according to responsibility, your argument would make sense. It didn't happen that way. But when you get to the issue, where would it have been reasonable? Where was it an abuse of discretion for him to set it or not set it? It was not unreasonable, given that there was going to be a new trial anyway, to say that that time period is on Minx. That's not an abuse of discretion. What you're talking about is if there had been some sort of evidence for an apportionment—well, there wasn't any of that kind of evidence. You could say, you know, 85 percent versus 15 percent will give you 15 percent of the period. There's no evidence to support that. There's no basis in the record based on what Mr. Minx presented for the district judge to make that kind of a determination. Based on the record, he made the determination, and it was not an abuse of discretion to cut it off. It appears he made the determination sort of arbitrarily just by picking the wrong date. And the question I think Judge Rader focuses on is, well, he didn't explain it the way you're explaining it. It may be there was a rationale behind it, but we sure don't get it. And he wins part of the new trial. How's that undue delay when he wins? It doesn't matter. Had the judge done exactly what this court told him he should have done the first time, at the end of his remitter decision, he would have said, no, by the way, you get a new trial. What would—you have the option, rather, of taking the remitter or going for a new trial. What would Mr. Minx have done? Mr. Minx was not taking the remitter. There would have been a new trial. So had he not made that mistake, there still would have been a second trial. There still would have been a gap between the two trials. Moreover, on the notice, regardless of whether his notice instruction was right, to the extent that Minx was going to demand the new trial rather than accept the remitter, again, there's going to be the gap because of what Minx was responsible for in not putting on a proper proof. So that's my understanding of what the record actually shows. There's nothing in the record that shows any kind of mean-spiritedness by this district court judge toward Mr. Minx that he was intending to sanction or punish or anything. He looked at the facts. He made a reasonable factual determination and a non-abusive application of that to the law. If the Court has any other questions, I'm happy to answer them. The only further thing I'd say based on what the— Simple or compound? Simple. Simple was what was originally requested by Mr. Minx. There was no reason—there was no argument made for why it should be compound. There is no requirement anywhere in the cases that a judge give compound versus simple. It's supposed to be based on the facts presented. In this case, there are no facts presented by Mr. Minx about why, as Mr. Minx, compound interest as opposed to simple interest is the appropriate way to assess the interest. On the question that came up in connection with the evidentiary rulings about profits and things like that, a couple of very quick points. One, we're talking about Minx Engineering's profits, not Mr. Minx's profits, and they try to put that all together in one, but it doesn't go that way. Number two, there was no expert discovery in this case. Why not? On remand, Polaris asked to reopen discovery for purposes of expert and fact discovery. Mr. Minx opposed it. So the deficiencies in the record related to his proofs are, again, Mr. Minx's responsibilities. If there are other questions on his issues, I'm happy to answer them, but otherwise I'll move to the cross-appeal issue. In this case, there is one thing that is factually absolutely undisputed. That is that Mr. Minx's damages were proved to his actual damages. What harm he suffered as a result of the infringement on Polaris were proved to an absolute penny. It was $142,000 and change. How do we know that? We know that because he had an exclusive license agreement with Minx Engineering. The license agreement provided during this entire infringement period that he was entitled to 4% of sales to Polaris. We know that there were 581,565 reverse speed limiters that would have been bought by Polaris but for the infringement. We know that the price of those was $6.11. 4% times 581,565 times $6.11 gives you $142,000 and change. That's what Mr. Minx actually lost as a result of the infringement by Polaris, and those are not disputed facts. In this case, under Section 284, the fundamental principle behind the statute on damages comes from the 1946 amendments, which said no longer is a patentee entitled to disgorgement, to essentially a windfall on the profits made by the infringer, what you get are your actual general damages. And where the actual general damages can be proved, that's what you're entitled to. You're not entitled where you prove your actual damages to then go to the jury and say, I'd like five times that under the Georgia-Pacific hypothetical negotiation reasonable royalty analysis. How do we know that? We know that from reading this court's cases, and we know that from reading the Supreme Court plurality decision in Arrow, where in 1964 the court faced essentially exactly what Mr. Minx is trying to do. You have a plaintiff who goes after two contributory infringers. He gets a payment from one. He then wants to go after the second one for a reasonable royalty, relying on the language in Section 284 that says, but in no event less than a reasonable royalty. What does the Supreme Court say in the plurality opinion? They say, no, everybody in that case is misapprehending the meaning and the legislative history of Section 284. You're not allowed to do that. What the statute gives you is your damages. Once you've got your damages, that's the end of the analysis. And Justice Brennan was very clear in addressing that very thing when he said, in response to the party's positions about reasonable royalties, no, you've got it all wrong. Now, it's a plurality opinion, but it is a plurality opinion that has been out there for, I guess it's 46 years. It has been cited repeatedly by this Court with approval, and this Court's own decisions talk about the fact that you get to hypothetical negotiation damages only where you don't have the ability to prove the actual damages. So on the cross-appeal issue, Mr. Minx's proofs led to his actual damages. He was absolutely entitled to his actual damages. What he wasn't entitled to do was to ignore his actual damages, which under the statute made him whole for his entire pecuniary loss as a result of Polaris' infringement, and then go and say, I want five times that. That's not allowed by the statute. So you want a new trial? Pardon? You want a new trial? No, Your Honor. I didn't think so. We absolutely don't want a new trial. We've had enough of a good thing. We're not asking for a remand for a new trial. What we're asking for is an application on an issue of law. This is an issue of law. Either Section 284 allows what he did or, as we believe, it doesn't. That can be corrected by this Court's de novo review on the issue of law. Isn't that really a remand that you're asking for? Yeah. Isn't that what you're asking for? You're asking for a remand. No. No, not at all. A remand is based on a factual assessment of the merits of balancing the evidence that's presented. You're just arguing the issue of fact as an issue of law, which I don't think is correct. No. You're asking essentially for a remand. No. The facts are undisputed. These three facts that I talked about, the price, the royalty, and the number of units, undisputed facts. Nobody's asking for any weighing of facts. The issue is, once you have those facts, what does that mean as a matter of law under Section 284? And what it means as a matter of law under Section 284 is that he's entitled to this $142,000 and some odd cents. Under Eleventh Circuit law, which is the regional circuit law that applies here, the Court may correct an error of law and assess a new judgment with a different number where it's an issue of law. And this is an issue of law as we're presenting it. Do you want to save your last minute? I do. Thank you. Mr. Brannick, you have a little over three minutes. Thank you, Your Honor. Let me start with the cross-appeal issue first because I think it's deja vu all over again. This was precisely the argument that was presented to this Court in the first appeal. The judge limited the damages as a matter of law to the 4 percent royalty. This Court said, no, that's not a question of law. That's a question of fact. The judge was wrong to do that and send it back. So they're making precisely the same argument. And they're doing it exactly in the same wrong way that the judge did it the first time around. The judge looked at the royalty that Mr. Minx was being paid by his own company and looked at that intercompany royalty and said that that's representative of the reasonable royalty. And this Court said at page 1373 of the opinion, the Court should not have accepted as conclusive the royalty agreement between Minx and his own closed corporation. End of story on the cross-appeal. This Court has already dealt with that, and the cases are legion in terms of not basing the reasonable royalty on a relationship between yourself and your own closed corporation. Even beyond that, there was competent substantial evidence in the record to support the 20 percent. As the judge said in his opinion, that's pages 43, 47, and 49 in the joint appendix. So I don't think there's any issue there. Getting back to the interest issue. Who was responsible for the delay here? Mr. Minx could have put on the most beautiful case in the world, the cleanest case in the world, and they were still going back for another trial because, number one, the judge got it wrong by limiting his damages as a matter of law to the 4 percent royalty. So it didn't really matter what evidence Mr. Minx put on because the judge had the wrong idea and put on that 4 percent cap. So they were going back for that reason. And number two, they were going back because the judge got the notice issue wrong. The judge instructed the jury improperly on notice, so Mr. Minx only got damages for a very short period, about a year, instead of the several years that he should have gotten. So there was absolutely no question that because of these errors that the judge made that this case was going back. It had nothing to do with whether Mr. Minx's trial lawyer put on a beautiful or a lousy case on damages. It was all about the errors committed by the trial judge, the legal errors. And beyond that, even if the judge hadn't committed those legal errors, Polaris took its own appeal, which of course it lost on the infringement issues and on the willfulness issue. So to put the responsibility of that first appeal on Mr. Minx is just absolutely wrong as a matter of law. Your Honor asked the question, compound versus simple. I think the answer is compound because 284 says that you are supposed to get full compensation. How do you get full compensation? Part of that is making sure you're compensated for the loss of the use of that money. Had Mr. Minx had that money, he could have invested it and he would have gotten compound interest. So just as a simple matter of ensuring full and fair compensation, the compound interest and the start and the end date should be adjusted. So for all those reasons, we think the decision below should be reversed. Thank you, Mr. Brannick. Mr. Roth, you have 50 seconds. Thank you. Three points. Number one, Section 284 says interest and cost is fixed by the court. No, we're not talking interest anymore. You're limited to your cross appeal. Okay. On the cross appeal issue, I think we were very clear in our reply brief. We're not doing a substantial evidence argument. That's not the point. That's what they want to argue. We're not saying there wasn't substantial evidence if the Georgia-Pacific analysis was the appropriate analysis. As a matter of law, it was not the appropriate analysis, and therefore this court can correct that legal error without evaluating and weighing the evidentiary disputes, and it can do so without a new trial. I have nothing further unless the court has questions.  Thank you.